1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEALED LODGED

FILED 

AUG **12** 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

AUG **12** 2010

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

DISH NETWORK L.L.C., a Colorado Limited Liability Company, ECHOSTAR TECHNOLOGIES L.L.C., a Texas Limited Liability Company, and NAGRASTAR L.L.C., a Colorado Limited Liability Company,

Plaintiffs

v.

CARLOS FLORES an individual, aka "karloz25" dba www.fta-spot.com and The Media Creative Group ("TMC")

Defendant

CASE NO: **1 0 CV 0 0 1 4 4 3 LJO GSA**

**[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, CIVIL SEIZURE/IMPOUNDMENT ORDER, ORDER FOR ASSET FREEZE AND ORDER FOR ACCOUNTING**

DENYING

Having considered Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause made pursuant to 17 U.S.C. § 1203(b)(1), 47 U.S.C. § 605(e)(3)(B)(i), and Fed. R. Civ. P. 65, the Plaintiffs' Memorandum and Declarations in Support of said Motion and having considered Plaintiffs' *Ex Parte* Motion for Civil Seizure/Impound Order, Order for Asset

Freeze, and Order For an Accounting made pursuant to 17 U.S.C. § 1203(b)(1), 17 U.S.C. § 1203(b)(2) and 47 U.S.C. § 605(e)(3)(B)(i), the Plaintiffs' Memorandum and Declarations in Support of said Motion and having considered the complete file of this Action, the Court finds that the Plaintiffs have satisfied the pertinent statutory provisions regarding the issuance of these Orders and the Court finds that the Plaintiffs have satisfied the provisions of Fed. R. Civ. P. 65(b) in that the Plaintiffs have demonstrated that:

1. The Plaintiffs have a substantial likelihood of success on the merits of their claims asserted against the Defendant in this Action;

2. Irreparable injury will be suffered by the Plaintiffs unless the requested relief is granted;

3. The threatened injury to the Plaintiffs outweighs whatever damage the proposed injunction may cause the Defendant;

4. The public interest will be advanced by the requested relief; and

5. If given notice of the Plaintiffs' pending motions the Defendant would be likely to move, hide, alter, or destroy evidence.

Also, the Court finds that good cause has been shown such that the Court hereby **GRANTS** *in part* and DENIES in part Plaintiffs' Motions as follows:

## I. Temporary Restraining Order

**IT IS HEREBY ORDERED** that, pending a preliminary injunction hearing to be held as set forth below, the Defendant Carlos Flores and his employees, agents, representatives, and all other persons acting or claiming to act on his behalf or under his direction or authority, and all persons acting in concert or in participation with Defendant are hereby **ENJOINED** from:

1. Manufacturing, importing, offering to the public, providing, modifying, or otherwise trafficking in any so called "Free to Air" (FTA) receivers, internet-enabled FTA receiver or dongle-adapted FTA receiver that has been modified without authorization, any DISH Network satellite pirating device *regardless of form, including pirate software*, or any other

technology, product, service, device, component, or part thereof, that:

    a.  is primarily designed or produced for the purpose of circumventing the encryption protection contained in the software on NagraStar's smart cards or contained within EchoStar Technologies' receivers or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

    b.  has only limited commercially significant purpose or use other than to circumvent DISH Network's encryption access control protection or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming;

    c.  is knowingly marketed by Defendants and/or others acting in concert with them for use in circumventing DISH Network's encryption access control protection or any other technological measure adopted by DISH Network and/or EchoStar Technologies and/or NagraStar that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming.

2. Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any FTA receiver or internet-enabled FTA receiver or dongle-adapted FTA receiver that has been modified without authorization or any other electronic, mechanical, or other devices, including FTA receivers, internet-enabled FTA receivers or dongle-adapted FTA receivers that have been programmed with pirate software, the design of which renders them *primarily useful* for the purpose of unauthorized interception of DISH Network's signals.

3.  Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any DISH Network satellite pirating device *regardless of form*, including pirate software, or any other technology, product, service, device, component, or part thereof, that is *primarily useful* for the purpose of the unauthorized interception of DISH Network's signals.

4.  ~~Assembling, modifying, selling, advertising, marketing, possessing, transporting, and/or distributing through any means any DISH Network satellite pirating devices which violate the provisions of this order.~~

5.  Assembling, modifying, selling, advertising, marketing, possessing, transporting and/or distributing through any means any type of FTA receivers, internet-enabled FTA receivers or dongle-adapted FTA receivers, where the Defendant or those acting with the Defendant are:

    a.  programming the FTA receivers, internet-enabled FTA receivers or dongle-adapted FTA receivers with modified FTA/IKS software or other piracy software before distribution to the receiver customers; and/or

    b.  distributing, in any manner, modified FTA/IKS software or other piracy software to the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers, including but not limited to distributing the modified FTA/IKS software or other piracy software by e-mail attachments or distributing the modified FTA/IKS software or other piracy software by delivering the software contained on a software of holding device; and/or

    c.  directing, in any way, the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers to piracy websites, piracy forums, and/or piracy chat rooms where the modified FTA/IKS software or other piracy software is available (pirate websites);

    d.  utilizing third parties such as so-called "installers" to effectuate having the FTA

receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver or dongle (or similar internet connection device) customers' receiver ultimately programmed with modified FTA/IKS software or other piracy software;

e.  subsidizing the pirate websites, including subsidizing the pirate websites through advertising on the pirate websites;

f.  utilizing website hyperlinks back and forth between any websites operated or controlled by Defendants and the piracy websites;

g.  selling or distributing peripheral devices which are of assistance to the FTA receiver, internet-enabled FTA receiver, dongle-adapted FTA receiver, or dongle (or similar internet connection device) customers to effectuate the unauthorized interception of DISH Network signals, including but not limited to, any 8PSK board designed to effectuate the receipt of Dish Network's signals in a high-definition mode and satellite dish antennas which are designed to receive premium channel satellite signals as opposed to true FTA signals.

6.  Destroying, hiding, or removing all records, in any form (including electronic form), that are or were of the type of records ordered to be seized in the civil seizure/impound order set forth below.

7.  Operating the website www.fta-spot.com, immediately freezing the domain name www.fta-spot.com and preventing such domain name from being transferred or sold pending further order of this Court.

8.  Making the contents website www.fta-spot.com available on the internet and to immediately preserve, and not destroy, alter or modify, the contents of website www.fta-spot.com, all records and documents pertaining to that website, all records and documents pertaining to the Plaintiffs and all items identified subject to Seizure.

9.  Operating the websites www.fta-spot.com or any other website Defendant controls or



operates in any manner such that the operation would violate other terms of the injunctive relief set forth herein, including, but not limited to, barring the operation of said website while distributing any type of DISH Network piracy software or piracy devices or while advertising his sites on any pirate websites.

10. Engaging in any activity which would violate the terms of the injunctive relief set forth herein while utilizing websites not in the Defendants' control, including but not limited to, such websites as EBay and Craigslist.

## II.    Civil Seizure/Impoundment Order

**IT IS FURTHER ORDERED** that that the Plaintiffs' Motion for **Civil Seizure/Impoundment Order** is **GRANTED** as follows:

1. The United States Marshal and/or the Marshal's personnel and/or or other suitable officers shall execute this order, seizing/impounding the items set forth herein in accordance with the provisions of this Order from the Defendant's premises located at 3592 San Moritz Avenue, Merced, California 95348.

2. The United States Marshal and/or the Marshal's personnel and/or or other suitable officers shall seize and impound all:

   a. all copies, electronic or otherwise, of pirate software;

   b. all copies, electronic or otherwise, of or other circumvention or signal theft technology, components, or devices;

   c. FTA receivers;

   d. Internet-enabled FTA receivers;

   e. Dongle-adapted FTA receivers;

   f. Dongles (or similar internet connection devices);

   g. Modified internet-enabled FTA receivers;

   h. Modified dongle-adapted FTA receivers;

i. AVR3-adapted DISH Network receivers;

j. "AVR3" circuit boards;

k. Peripheral devices or other devices related to the FTA receivers, internet-enabled FTA receivers, and dongle-adapted FTA receivers including, but not limited to, satellite dish antennas not designed to receive true FTA signals; 8PSK boards designed to effectuate the receipt of DISH Network's signals in a high-definition mode and AVR3 technology devices;

l. Modified FTA/IKS software or other piracy software, including any devices holding and/or containing said software;

m. Signal theft devices that have been modified or manufactured without authorization;

n. All FTA reprogramming equipment and equipment used in the alteration and/or modification of said devices;

o. All FTA/IKS reprogramming equipment and equipment used in the alteration and/or modification of said devices;

that are in the possession, custody, or control of Defendant or his employees, agents, representatives and all other persons acting or claiming to act on their behalf or under Defendants' direction or authority, and all persons acting in concert or in participation with Defendants or that are located at the business controlled by said Defendant.

3. The United States Marshal and/or the Marshal's personnel and/or or other suitable officers shall seize and impound all records, in any form (including electronic form), that evidence, or refer, to:

a. FTA Receivers, modified FTA receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers, dongles (or similar internet connection device), modified FTA card hack software, modified FTA/IKS software or other piracy software, AVR3-adapted DISH Network receivers, "AVR" circuit boards, altered or modified

Order for TRO, Show Cause, Civil Seizure/Impoundment, Asset Freeze and Accounting

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NagraStar smart cards, smart cards that have been programmed with pirate software, EchoStar Technologies receivers, so called "virgin" smart cards, or other unlawful devices and any components thereof, as described herein;

b. communications or correspondence with suppliers, including any suppliers of FTA receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers, dongles (or similar internet connection devices), modified FTA card hack software, modified FTA/IKS software or other piracy software, AVR3-adapted DISH Network receivers, "AVR3" circuit boards, altered or modified NagraStar smart cards, smart cards that have been programmed with pirate software, EchoStar Technologies receivers, so called "virgin" smart cards, or other unlawful devices and any components thereof, as described herein;

c. communications, correspondence, invoices, payment records, PayPal records or other records of sales (e.g. "end user" records) with customers of any pirating devices, software, hardware or other equipment or services, including any purchasers of FTA receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers, dongles (or similar internet connection devices), modified FTA card hack software, modified FTA/IKS software or other piracy software, AVR3-adapted DISH Network receivers, "AVR3" circuit boards, altered or modified NagraStar smart cards, smart cards that have been programmed with pirate software, EchoStar Technologies receivers, so called "virgin" smart cards, or other unlawful devices and any components thereof, as described herein;

d. communications or correspondence, "know-how" documentation, or other documentation concerning the modified FTA piracy method, the modified FTA/IKS piracy method, smart card programming, box key extraction, and DISH Network signal piracy;

e.  communications or correspondence or other documentation concerning the identity of any manufactures or suppliers including any suppliers of FTA receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers, dongles (or similar internet connection devices), modified FTA card hack software, modified FTA/IKS software or other piracy software, AVR3-adapted DISH Network receivers, "AVR3" circuit boards, altered or modified NagraStar smart cards, smart cards that have been programmed with pirate software, EchoStar Technologies receivers, so called "virgin" smart cards, or other unlawful devices and any components thereof, as described herein;

f.  communications or correspondence or other documentation concerning the identity of any customers of any pirating devices, software, hardware or other equipment or services, including any purchasers of FTA receivers, internet-enabled FTA receivers, dongle-adapted FTA receivers, dongles (or similar internet connection devices), modified FTA card hack software, modified FTA/IKS software or other piracy software, AVR3-adapted DISH Network receivers, "AVR3" circuit boards, altered or modified NagraStar smart cards, smart cards that have been programmed with pirate software, EchoStar Technologies receivers, so called "virgin" smart cards, or other unlawful devices and any components thereof, as described herein; and

g.  communications or correspondence or other documentation concerning the quantity of all such devices in inventory and sold by Defendant.

I.  The United States Marshal and/or the Marshal's personnel and/or or other suitable officers shall seize and impound all cash, checks, and other form of payment located at the Defendant's premises located at 3592 San Moritz Avenue, Merced, CA 95348 other than any cash or checks physically located on the person of the Defendant or any employee or person acting on behalf of the Defendant.

2. The United States Marshal and/or the Marshal's personnel and/or or other suitable officers shall seize and impound all computers or electronic storage drives or back-up tapes in the possession, custody, or control of Defendant or his employees, agents, representatives, and all other persons acting or claiming to act on their behalf or under Defendant's direction or authority, and all persons acting in concert or in participation with Defendant that contain information related to the records subject to being impounded as described and delineated above, with the Defendant retaining the right to move this Court to seek return of said computers only after the Plaintiffs are given sufficient time to examine the contents of same and at their option to make mirror image copies of any computer or electronic storage drives or back up tapes.

3. The Plaintiffs, their agents, their attorneys and/or persons under their supervision shall accompany the United States Marshal and/or the Marshal's personnel and/or or other suitable officers at the seizure, and the United States Marshal and/or the Marshal's personnel and/or or other suitable officers are authorized to:

   a. Seize the above referenced items, with the United States Marshal and/or the Marshal's personnel and/or or other suitable officers, in their discretion, utilizing the expertise of the Plaintiffs' and/or employees and/or their agents/experts to identify the items subject to seizure set forth in this order;

   b. Take inventory of the items at the seizure, with the United States Marshal and/or the Marshal's personnel and/or or other suitable officers, in their discretion, utilizing the expertise of the Plaintiffs' and/or employees and/or their agents/experts in the inventory and cataloging of the items subject to seizure as a forth in this order;

   c. Grant possession of items subject to seizure as set forth in this Order to the Plaintiffs and/or their attorneys who shall take control of said items maintaining them in a secure facility controlled by them pending further order of this Court. A suitable

secure facility shall include, but not be limited to, the offices of the Plaintiffs' local counsel, Attorney Anthony Bell of Bell & Boylan Lawyers 2377 W. Shaw Ave., Ste. 112 Fresno, CA 93711 or at some other secure location under his control;

d. Utilize all due force necessary to execute this Court's order and to protect the Plaintiffs and their agents while executing the Civil Seizure/Impoundment Order; that necessary force shall include the authority to:

   i. Temporarily confiscate any weapons located at the Defendant's premises located at 3592 San Moritz Avenue, Merced, CA 95348 at least until the Plaintiffs and their agents and attorneys have fully executed the Seizure and left the Defendant's premises;

   ii. ~~Break open and~~ enter the Defendant's premises *under the circumstances faced, reasonably* located at 3592 San Moritz Avenue, Merced, CA 95348 regardless of whether said premises is locked or unlocked, or occupied or unoccupied, and inspect the contents of any room, closets, cabinets, vehicles, out-buildings, garages, containers, packages, or desks and seize any equipment utilized to manufacture the infringing items; and

   iii. Should the United States Marshal and/or the Marshal's personnel and/or or other suitable officers have any difficulty in locating any of the items which are described and/or delineated in this civil seizure/impoundment order the Defendant, his agents, and employees are required, ~~under pain of default,~~ at the time of the seizure, to cooperate with the United States Marshal and/or the Marshal's personnel and/or or other suitable officers to implement this order by identifying where the subject items are located, including identifying any *unless such identification falls within 5th Amendment protections,* other locations at which the items are or may be found, and shall provide the United States Marshal and/or the Marshal's personnel and/or or other suitable

*the opportunity to obtain a order*
*supplenative court access*
*to attempt*

officers ~~immediate access to~~ such locations where the United States Marshal

and/or the Marshal's personnel and/or or other suitable officers ~~shall~~ then seize *may, pursuant to order*

and impound same under the terms of this order; and *a subsequent* *Defendant is not*
*to destroy any evidence or potential evidence during the interim*
*time period*

iv. Should the United States Marshal and/or the Marshal's personnel and/or be

other suitable officers have any difficulty in accessing any data on any

computer or electronic storage device which store the records which are the

subject of this civil seizure/impoundment order, *pursuant to a supplemental order* the Defendant, his agents, and

employees ~~are~~ *may be* required, ~~under pain of default, at the time of the seizure~~ to

provide any necessary passwords or user names to access to computers or

electronic storage device.

## III. Asset freeze

**IT IS FURTHER ORDERED** that that the Plaintiffs' Motion for **Asset freeze** is ~~GRANTED~~ DENIED

~~as follows~~:

The Defendant, Carlos Flores and his employees, agents, representatives, and all other persons

acting or claiming to act on his behalf or under Defendants' direction or authority, and all persons

acting in concert or in participation with Defendant are hereby **ENJOINED** from transferring,

removing, encumbering, or permitting withdrawal of any assets or property belonging to Defendant,

whether real or personal, tangible or intangible, including cash, bank accounts of any kind, stock

~~accounts, bonds, and title to Defendant's business property pending further order from this Court.~~

## IV. Accounting

**IT IS FURTHER ORDERED** that that the Plaintiffs' Motion for an **Accounting** is

DENIED.
~~GRANTED as follows:~~

~~On the date of the service of this order or no later than three (3) court days following service of~~

this Order, Defendant must provide the Plaintiffs a written accounting of all assets and property

belonging to Defendant, which in the case of any bank account, shall include the account name,

number, current balance, and name and location of the bank or other custodian holding such account.

## V. Bond

**IT IS FURTHER ORDERED** that the Plaintiffs shall post a bond in the amount of $ 50,000

## VI. Indemnification

### IT IS FURTHER ORDERED that:

1. Plaintiffs shall hold harmless the United States Marshal and/or the Marshal's personnel from any claims arising from any acts, incidents, or occurrences in connection with the seizure and possession of the seized property, including any third-party claims, and the or other suitable official(s) shall be discharged of his or her duties and responsibilities for safekeeping the seized property.

2. Upon transfer of custody of the seized property to the substitute custodian, the United States Marshal and/or the Marshal's personnel shall not be liable for any loss occurring while it remains in the custody of the substitute custodian. The substitute custodian may move the seized property to a secure facility controlled by the custodian. Such materials may be copied and mirror images made of the seized computers.

## VII. SHOW CAUSE HEARING

1. Defendant is further ordered to appear on _Monday, Aug. 30, 2010_, at _8:30 a.m._ for a hearing to show cause:

   a. Why the items seized should not be impounded pending the trial in this Action; and

   b. Why this Temporary Restraining Order should not be confirmed as a Preliminary Injunction in this Civil Action.

2. The Defendant shall file a responsive memorandum and any supporting documents not later than two (2) business days prior to the hearing set forth herein and serve a copy of said response of papers on the Plaintiffs' local counsel and on the Plaintiffs' lead counsel with the Plaintiffs having the right to file reply submissions on the day of the hearing.

Order for TRO, Show Cause, Civil Seizure/Impoundment, Asset Freeze and Accounting

13

3. Should the Defendants fail to file a responsive memorandum in a timely manner, said failure shall be deemed a waiver. The hearing set forth above shall then be canceled, this Temporary Restraining Order shall be the Preliminary Injunction in this civil Action, and the Defendants shall be deemed to have waived their rights to show cause why the items seized should not be impounded pending the trial in this Action.

**IT IS SO ORDERED.**

Dated: August _12_, 2010

UNITED STATES DISTRICT JUDGE